**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**

| | |
|---|---|
| **FAYE ANN ANDERSON,** | **CIVIL ACTION NO. 7:13-CV-14-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

Plaintiff Faye Ann Anderson brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for supplemental security income. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Anderson filed her claim for benefits on December 1, 2010, alleging an onset date of October 5, 2008. (AR 54). Her claim was initially denied on March 18, 2011, and again on June 6, 2011. (AR 54). Anderson then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (AR 54). After the hearing, on September 10, 2012, the ALJ issued an unfavorable decision.

At the time of the alleged onset of disability, Anderson was forty-eight, and at the time of her application, hearing, and the rendering of the ALJ decision, Anderson was fifty years old or older. (AR 65). She has an eighth grade education, and has a past work experience of being a nurse's aide for the elderly, a food preparation worker, housekeeper, court receptionist, and hotel maid. (AR 80, 92). She claims that she became disabled on October 5, 2008. Anderson

explained her medical problems by saying, "I get spasm in the lower part of my back. I got scoliosis in my neck, I'm right-handed, I got carpel in my right hand, in my wrist and the pain shoots up my arm. And then I got a bone pressing against the nerve in my arm, in my right arm. And I broke my heel several years ago back and I have a lot of problems out of my heel, walking and stuff like that." (AR 84). Anderson also maintains that she has mental health problems and a learning disability. (AR 81, 83, 90).

In determining whether a claimant has a compensable disability under the Social Security Act (the "Act"), the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Social Security*, 127 F. 3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of the process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404, 1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, the ALJ began his analysis at step one by determining that the claimant has not engaged in gainful activity since December 1, 2010, the application date. (R 56). At step two, the ALJ determined that Anderson suffers from the following severe impairments: scoliosis of the cervical and lumbar spines; cervical strain; history of left calcaneus fracture; obesity; tendinosis of the right shoulder; borderline intellectual functioning; major depressive disorder; generalized anxiety disorder; and pain disorder. (AR 56). In the third step, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 59).

At step four, the ALJ found that based on the medically determinable evidence, Anderson has the residual function capacity ("RFC") to perform less than a full range of medium work. "She can occasionally climb ladders, ropes, or scaffolds, stoop, and crouch. She can frequently climb ramps or stairs. She can frequently reach with the right, dominant upper extremity. She can occasionally reach overhead with the right upper extremity. She is limited to simple, routine, and repetitive tasks; can only work in a low-stress job . . . can have no interaction with the public; and can have only occasional interaction with coworkers and supervisors." (AR 60–61).

3

Next, although the ALJ appears to have analyzed Anderson's ability to perform past relevant work under the heading of step five, such analysis is generally performed in step four. The ALJ found that the claimant was capable of performing past relevant work as a housekeeper as it is generally performed, but not as she had once performed it. (AR 64). Regardless of the incorrect heading, the ALJ's findings were based on the substantial evidence and were legally sound. The ALJ could have concluded his analysis at this step, but he chose to continue to step five as an alternative to his finding that Anderson was capable of performing past relevant work. At step five, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that the claimant also can perform. (A.R. 66).

The Appeals Commission subsequently denied Anderson's request for review on January 31, 2013. (DE 14-1, p. 3). Anderson has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

**II. GENERAL STANDARD OF REVIEW**

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cullip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations.

*See id.* Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the Court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## III. ANALYSIS

On appeal, Anderson argues that the ALJ's decision is not supported by substantial evidence and was not decided correctly for five reasons. While Anderson moved for leave to file excess pages in her summary judgment motion, which the Court allowed, Anderson does not indicate at which step or steps the ALJ particularly erred. However, the Court will address each of Anderson's arguments in turn.

Anderson's first argument is that the ALJ misstated Anderson's age in his opinion. (DE 14-1, p. 28). This is true; during his analysis in step five, the ALJ did misstate Anderson's age. The ALJ indicated that Anderson was in the "younger person" category (under age fifty), but Anderson was fifty and older at the time of her application, hearing, and the ALJ's decision. Under a step five analysis, individuals who are age fifty to fifty-four are generally considered persons "closely approaching advanced age," and this "may seriously affect [one's] ability to adjust to other work." 20 C.F.R. § 416.963(d).[1]

However, the ALJ's misstatement concerning Anderson's age category was made when he was discussing an alternative rationale for his finding that Anderson was not disabled, and thus, the error did not affect the ultimate outcome in this case. The ALJ first found that

---

[1] 20 C.F.R. § 416.963 makes specific reference to a claimant's ability to adjust to other work and cross-references § 416.920(g)(1), which lists the other factors to consider when determining whether a claimant can adjust to any other work. Thus, it is clear that the age categories at issue here are only relevant as a factor under a step five analysis.

5

Anderson was capable of performing past relevant work as a housekeeper. (AR 65). To make that determination, the ALJ only had to determine whether, based on her residual functional capacity, Anderson was still able to perform her past relevant work. Once the ALJ made the determination that Anderson could perform her past work as a housekeeper generally, Anderson was considered "not disabled," and the ALJ could have concluded his analysis at this step. 20 C.F.R. § 416.920(a)(iv).

Alternatively, the ALJ concluded under step five that Anderson was capable of adjusting to other work. (AR 65–66). A claimant's age serves as one of several factors in determining whether an individual can be trained to perform other work under step five, and § 416.963 provides three age categories to help guide the analysis. *See* 20 C.F.R. § 416.920(g)(1); 20 C.F.R. § 404.1520(a)(4)(v). Anderson argues that the ALJ placed her in the "younger person category" when she should have been considered "a person closely approaching advanced age." The ALJ erred when he used an incorrect age in step five to determine whether, considering Anderson's RFC, *age*, education, and work experience, she could make an adjustment to other work. However, because the ALJ's finding in step five was merely an alternative to his finding that Anderson was able to perform past work and therefore was not disabled, the ALJ's error was harmless. Thus, "remand would be an idle and useless formality." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n. 6 (1969).

Second, Anderson argues that the ALJ failed to accurately assess her literacy skills. (DE 14-1, p. 1). In support of this argument, Anderson indicates that the ALJ failed to consider Anderson's testimony that she had to retake her driver's license test five times and that she was enrolled in special education classes in school. (DE 14-1, p. 4). Anderson also insists that the

ALJ should have given more weight to Dr. Pack's determination that Anderson was reading at a fourth grade reading level.[2] (DE 14-1, p. 4).

As previously noted, Anderson does not indicate with particularity at which step the ALJ erred. Under her second argument, Anderson conflates two separate findings made by the ALJ. The ALJ first found that a learning disorder was non-medically determinable under step two, because there was not sufficient evidence to support such a finding. (AR 56) (DE 14-1, p.4). Considering the evidence as a whole, the Court agrees. While Anderson reported that she was enrolled in special education classes due to a learning disorder, no evidence was presented to corroborate her testimony. There is likewise no evidence in the record to connect the retaking her driver's test five times to a learning disability or a literacy problem. The ALJ's determination that Anderson's learning disorder was non-medically determinable was therefore based on a lack of evidence.

The crux of Anderson's second argument is that the ALJ erred in determining Anderson's education under step five. This argument fails for the same reason Anderson's argument concerning her age fails. As the Court previously explained, the ALJ in the present case did not need to proceed to a step five analysis because he already determined that Anderson was not disabled. The ALJ only proceeded to step five as an alternative to his finding that Anderson could perform past relevant work under step four. (AR 65–66). Any error the ALJ may have made in step five did not have any adverse effect on Anderson, as she was already found to be "not disabled."

---

[2] Anderson's argument here is that the Court did not consider Dr. Pack's determination that Anderson was reading on a fourth grade level to show that Anderson should have been categorized as slightly above functionally illiterate or as marginally educated as defined by the 20 C.F.R. §404.1564(b). The Court will decline to address this argument since it has already determined that any potential error made under step five is harmless.

Anderson's third and fourth reasons for remand are related. Anderson argues that the ALJ gave improper weight to opinions rendered by non-examining state agency physicians, specifically "Drs. Mukherjee and Gonzalez," and that the ALJ failed to properly weigh the medical opinions of Anderson's treating physicians and psychiatrists. (DE 14-1, p. 1–2).

As an initial matter, "the weight afforded a physician's opinion on the issues of the nature and severity of a claimant's impairments depends upon the relationship the physician may have had with the claimant, the evidence the physician presents to support his or her opinion, how consistent the physician's opinion is with the record as a whole, his or her specialty, and other factors." (DE 15, p. 4); 20 C.F.R. § 416.927(c). Generally, a treating physician's opinion receives controlling weight, and if the ALJ decides not to afford a treating physician's opinion controlling weight, he must provide reasons for doing so. *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir 2004). However, the Court of Appeals "has consistently stated that the [ALJ] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347–48. Further, "[t]he responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Social Sec.*, 342 Fed. Appx. 149, 157 (6h Cir. 2009).

In her motion, Anderson provides extensive review of Anderson's visits with her chiropractor, Dr. Akers and her nurse practitioner, Betty Karnes. However, chiropractors and nurse practitioners are not considered "medical source[s]" within the meaning of the Act and do not receive controlling weight in disability cases. 20 C.F.R. §§ 416.913(a), 416.927; *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (noting that chiropractors are not acceptable medical sources and are not accorded controlling weight). Thus, the ALJ was not

8

required to give good reasons for declining to give those opinions controlling weight. Moreover, the ALJ did consider those opinions and weighed them properly considering the evidence as a whole. (AR 63–65).

Any opinion of Anderson's social worker, Roger Coleman, is likewise not a medical source under the Act, and the ALJ was not required to give his opinion controlling weight. 20 C.F.R. § 416.913(a). The ALJ also considered Mr. Coleman's opinions, but gave them little weight because Mr. Coleman is not a proper medical source under the Act, only performed a one-time evaluation of Anderson, and held opinions that were inconsistent with the record as a whole. (AR 64).

Further, the ALJ did not give "controlling weight" to the opinions of non-examining consultants, "Drs. Mukherjee and Gonzalez." (DE 14-1, p.2). When Anderson refers to Dr. Gonzalez, the Court can only conclude she intended to reference Dr. Guerrero, as he is the physician in the administrative record that she cites. The ALJ is entitled to give great weight to the agency consultants if the evidence supports their opinions. 20 C.F.R. § 416.927(e)(2)(i). Here, the ALJ provided ample reasons as to why he gave great weight to the consulting physicians. The physicians' opinions aligned with the diagnostic evidence and physical evidence, as well as Anderson's prior statements on the record. (AR 63). Thus, the ALJ did not give the consulting physicians "controlling weight" or otherwise consider their opinions improperly.

In her motion for summary judgment, Anderson fails to indicate which physicians she considers "treating physicians." "This court may not try the case de novo, nor resolve conflicts in evidence, nor decide question of credibility." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (internal citations omitted). The Court will not provide a de novo review in

9

effort to consider Anderson's motion and determine which physicians may or may not have been treating physicians. Further, Anderson's extensive rehashing of her medical record in her motion is largely unhelpful and unconnected to her legal arguments.

As her final point, Anderson asserts that the ALJ failed to properly consider and evaluate the severity of Ms. Anderson's pain. (DE 14-1, p. 2). However, the ALJ's finding to the contrary is supported by the substantial evidence. Moreover, the ALJ did give consideration to Anderson's non-medical source opinions and non-treating physician opinions concerning her pain, but found that they were inconsistent with the record as a whole. (AR 63–65). "Without detailed corroborating medical evidence, this court will generally defer to the ALJ's assessment." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 229 (6th Cir. 1990).

Specifically with regard to Anderson's pain, the ALJ found:

> Ms. Anderson testified to chronic and debilitating pain levels involving her back, neck, arm, legs, and feet. However the diagnostic evidence of record does not support the claimant's allegations. X-rays of the spine noted only mild upper thoracic levoscoliosis and moderate scoliosis present in the lumbar spine with no evidence of a pathological indication. A MRI of the cervical spine was normal. The claimant has undergone chiropractic treatment which provided benefit, but has not undergone any other forms of conservative treatment modalities, such as a brace, physical therapy, injections, or use of a TENS unit. Ms. Anderson testified that she was unable to use her right arm . . . However, consultative examiner Rhoads noted normal strength in the upper extremities . . . .

(AR 62) (internal citations omitted). This excerpt from the ALJ's opinion represents a small portion of the many inconsistencies in the record that the ALJ found did not support Anderson's claim of disabling pain. Therefore, the Court concludes that the ALJ's finding regarding Anderson's pain is supported by substantial evidence.

Accordingly, Anderson has failed to establish entitlement to supplemental security income. As set forth above, a review of the entire record reveals that substantial evidence supports the ALJ's RFC finding and his conclusion that Anderson was capable of performing her past work as a housekeeper. The ALJ properly considered and weighed the evidence of various physicians and other non-medical sources. In conclusion, the decision of the ALJ that Anderson is not disabled is supported by substantial evidence and was made pursuant to the proper legal standards. Any potential errors made by the ALJ in step five are harmless, because his findings were made in the alternative to his previous finding that Anderson was not disabled.

## IV. CONCLUSION

Accordingly, the Court **HEREBY ORDERS** as follows

(1) Plaintiff's motion for summary judgment (DE 14) is **DENIED**;

(2) Defendant's motion for summary judgment (DE 15) is **GRANTED**;

(3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) A judgment consistent with this Opinion and Order will be entered contemporaneously.

This 21st day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY